The next matter on calendar, United States of America v. Edward Barquet, 18-10189. That matter's been submitted on the briefs and will be submitted as of this date. The next matter on for argument is United States of America v. Wallace Shimabukuro. Two consolidated cases, 18-10269 and 18-10338. Each side has 10 minutes. I'm also assuming that we received your request and that rather than close the courtroom, you're submitting one issue. It's been briefed and we won't refer to that in open court. Thank you. Good morning, Your Honors. Alexander Silver on behalf of Defendant Appellant Wallace Shimabukuro, hard name to pronounce. When preparing for this case, I thought that it would be a good way to address the recusal motion by going over actually the timeline, because this case involves three different court actions in front of Judge Mulway and four different appeals. But of course, before I do that, I have to address the waiver issue, which the government has raised. And our position is... There's only one waiver issue, right? That's correct. You have two cases. One has a waiver, one doesn't. So assuming we've got to get to the next issue, my question about the timeliness of the disqualification motion, when do you believe would have been a timely time, timely spot to file the disqualification motion? Because some of these are years old. Yes, Your Honor. So the way... I guess I'll go through the timeline because that's what you're addressing and then might explain why the motion was filed when it was filed. Because it was really a culmination of events in different cases that finally led to the straw that broke the... You're saying it's cumulative. Yes. And all those. And it was a straw that broke the Campbell's back, so to speak. Because cases have said, you can look at instances and it can build and build and build until it reaches that point where someone believes that the judge is no longer impartial. And remember, this is coming from my client who is watching all of these events and has and directed that we file these motions. And so where this case begins... Well, it also seems to coincide with that your client lost a number of legal challenges at that point, and so, which can't be the basis for just because I rule against you, that can't be the basis that I'm impartial. That's correct. The actual legal rulings can't be the basis, but the comments made and the position taken by the court over those times can be the basis for a claim of recusal. So it's... Yes, you're correct. The fact that a judge rules against a defendant happens all the time in multiple different arenas and that can't be the basis. Did the district judge have any information concerning your client other than through his judicial proceedings? No, Your Honor. But there were multiple judicial proceedings, which included, for example, where this case all began with the supervised release violation and there was a third violation where the court... And that began in May of 2017. And that's where the defendant was originally sentenced, revoked and sentenced to 17 months. That case came before this court and the court reversed that decision and sent it back for resentencing. Prior to that having happened, in July of 2017, so two months after the... Well, one month after the sentencing in the OSC, but two months after that began, there were new fraud charges brought. Then in December 13th, 2017, there was this issue with the OSC where he had already been and the stamps that was unresolved. What to do with that? And so he'd already been revoked, he'd already been sentenced, but the court would not give up possession of the coins and stamps. And we were debating and arguing for five months with very contested hearings what to do with that. And our position was the court no longer had jurisdiction over those coins and stamps and should return them pursuant to a Rule 41 motion. Instead, the court decided that it was going to create an intervener action. Interpleader? Excuse me? Interpleader? Interpleader action. Excuse me. And turn the coins over to the government and create a civil action. We vehemently protested that course of action. Well, all of this was because there were certain people that claimed it was their property and not the defendant's, right? There was one individual who came forward, a retired vet, who claimed that some of the coins belonged to him. No one made any claim that Mr. Shimabukuro had stolen those coins or had come into them knowing they had been stolen. The other person who made a claim was somebody that the defendant had taken gold coins from and was selling on consignment. So they weren't adversaries. That person just said, well, these coins are really mine. I want them back. And we agreed with that. So there was only one person who came in saying, some of these, I think, belong to me from a burglary that occurred at his house. What's your case that says it's legally impermissible for the trial judge to say, I want this resolved by an interpleader, and that's how we'll get rid of this property? Yes, Your Honor. So we had actually filed a motion claiming that the proper course of action was either a Rule 41 motion for return of property, which is the standard way we deal with these issues, or let the matter go to state court where this other individual could make a claim against the person. We had, when the judge said, no, I'm going to do this interpleader action, and basically created the situation where that occurred, our position was, how, you know, when the court comes into possession of an item through its probation department, what right does the court have to turn seized evidence over to the government? To this day, I don't know what right the court has to do that. Is there a position that the court should just return any evidence that's seized on a case to the defendant, regardless of the fact that the defendant has been convicted of crimes involving that, and there are people that are making claims? I'm reading the headline in the newspaper, you know, judge gives back seized evidence to defendant that was stolen in a burglary or something. Your Honor, that would be a Rule 41 action, which we thought was proper in this case. And a Rule 41 action is different, it has different standards, and different proponents of evidence standards. But counsel, what you're arguing is, it seems to me, a disagreement with the judge's legal rulings and the judgment she applied, where she made choices based on the procedures available, pending motions, information being brought to the court, as to go forward. But how does that show impartiality and bias against your client? I mean, everything I've heard for the last nearly seven minutes is really just, we disagree with what this judge did, not she was biased against my client. Right. Your Honor, well, in answering the question of how this was a cumulative thing, we're not here to debate the right or wrong of the interpleader action. What we are talking about is the Supreme Court law and the constitutional law that says that when a court gets enmeshed in the litigation of a defendant, then there is this appearance of impartiality having been lost, of the fairness having been lost. But how is enmeshed defined? Because it seems inevitable in this circumstance, where this district judge was assigned three supervised release revocation proceedings and a couple of different criminal matters, that she's going to be enmeshed in this defendant's proceedings because she's presiding over all of them. That's correct, Your Honor. But what we have here is a series of events. We have the letter to the court that, and the way she phrased it to the court and what she was arguing about to the court. We thought that letter would be kind of like a 28-J letter, a one-page, here's the case, here's the... Well, but she said exactly what she was going to say and ran it by both, all the counsel involved and no one objected to it, right? Your Honor, we didn't... I mean, it's not like she sent it secretly. No, that's correct, Your Honor, and we didn't... I mean, it wasn't ex parte, it wasn't any of those things, and there's, you know, the attorney's not a potted plant. If the attorney thought there was a problem, the attorney should have said that. Right, Your Honor. And I was that attorney, and I didn't say that. But what I did do was say that I took no position, which is not the way it was expressed to this court in the letter. She said the parties have no objection, which was true. When you took no position, you did not voice an objection. What you're suggesting is that she said something misleading. Now, if she had said the parties agree with what I'm saying, that would have been different, but it was accurate. No one had objected. The parties took no position. No one had objected to her filing the letter, but to say that we didn't have an objection to the substance, we took no position, very different, Your Honor. And what we're talking about, again, is not the right or wrong of the letter. Let's talk about the three aspects of this letter. The first part was the immediate release order, and you agreed with her on that. That's correct, because there was a misunderstanding when there was an argument before about him having served a time. We understand. We've read it. So you agreed. The government agreed. The judge agreed. So there's no problem there. She didn't misrepresent anything. You don't quibble with her. Not on that. Not on that first part. The next two issues involved footnotes two and three, which had absolutely nothing to do with your client. They were concerns she had about her ability to allow leniency in supervised release revocation proceedings and allow this intermittent confinement, which had nothing to do with your client. So I don't know how that can show any bias towards your client. Again, Your Honor, the issue — well, first of all, I think footnote two is a problem, because she was actually asking the Court to reconsider something where the Court kind of indicated that maybe the court was — the district court was completely wrong about having imposed intermittent confinement at all. So there was a suggestion there in the footnotes about the law. But it wasn't going to have any effect whatsoever on your client, right? Except for the fact that, again, now we're talking about the question of, is the court becoming enmeshed and embroiled in litigation? And as to footnote two, I think it certainly was. And whether it has any impact on my client or not is irrelevant. The question under the due process law — You're enmeshed in it, but that's not enmeshed in the same — you have to see the same people every day. You have to rule one. And they keep sending her the cases because it made sense that's how they assign cases. It wasn't like — you're sort of assuming that when defendants keep coming back, that as judges we think to ourselves, oh, this is great, I really want to see that person again. But, you know, we don't. But we have to decide cases. And your client just kept picking up cases, and that — and if that makes someone enmeshed because we have to decide a lot of cases involving the same person that keeps getting in trouble, we're enmeshed on every case. Yeah. I'll answer this question, and I'm over, Your Honor. But I don't want to see that client either, Your Honor, because I keep getting that client. But when we're talking about enmeshed and embroiled, we lay down in the briefs how different aspects of the OSC, the letter, what happened with the interpleader action, what happened at the sentencing and the fraud case, all combined to, we believe, show that the court under the Constitution was not acting impartially. Well, I can only comment that by listening to an oral argument, you certainly know how to object when you want to object. And when you take no position, I'm going to take that as you took no position. But I'll give you a minute for rebuttal, even though we've taken you over. Thank you. Thank you. Good morning. Good morning. May it please the Court? Well, both of you came from the, the students might be interested that both of you came from Hawaii, right? That is correct. So we handle cases over nine different states. So a lot of times people come from, is, our weather's not quite as good, right? Not quite. Okay. Perhaps especially this week, Your Honor. Can you put it back to 10 since I've used the time?       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I appreciate the attention and the attention that you're providing. And so I look forward to our team and your appearance. Thank you. Thank you, Your Honor. Assistant U.S. Attorney Marian Pursell for the United States. I think it's worth pointing out that at the point that Judge Mulway was handling the bulk of the matters here, she had been on the bench as a district judge for almost 20 years. She had seen, even in the mere four years that I've been in the District of Hawaii, she's seen more difficult defendants than this one. And she's dealt with more difficult issues than this. This was pretty routine, I think, for Judge Mulway. And there was nothing especially, what's the word, insightful. Nothing incited her in this case. There was nothing about this case that would have been exceptional or different or unusual. As I understand my adversary's arguments, there are a lot of ways to break up what his arguments are with respect to recusal, the way I've broken them up. He argues that Judge Mulway didn't want to release property to him without determining ownership of that property. Let me ask you the first question I asked him as well. What would have been a timely disqualification motion? That's almost impossible for me to answer, Your Honor, here, because I don't think there has ever been a basis. You could have sat with him. I'm sorry? You could have sat with him, because he couldn't answer it either. I don't think there's ever been a basis for recusal here. So for me, there is no point at which it would have been appropriate. As a trial judge, I'm kind of interested. You do something. When is it timely? It's not like there's a statute of limitations. There's what would be the timely appropriate period? The case law on that, understandably, is not — doesn't pinpoint a particular moment. It would have to be before it's, as a practical matter, too late. And there's certainly cases that talk about bringing a motion — delaying bringing a motion on purpose in order to gain an advantage. I'm not going to suggest that that happened here. I quite take my adversary's word for it that his client at some point became frustrated and, at that point, requested — He got tired of losing. He got tired of losing. That's not — that's not that uncommon, that that occurs. Taking them in chronological order — But technically, if he were losing, if you're losing because the judge is considering outside information or the judge is showing indications of being so frustrated with the person and is so annoyed with them and all of that, why couldn't someone bring a motion at that point that, if the judge had become intemperate and just did not appear to be following the law and had just, you know — If you say one more thing, defendant, you know, I've had it with you and you're going to see — you're going to — you're really not going to like what I'm going to do. So clearly, if that happened at some point, you know, someone would have — they could bring that up to the court, couldn't they? Of course, Your Honor, and they're certainly entitled to bring a motion. The — the Supreme Court said in Lightkey that opinions formed by the judge on the basis of facts introduced or events occurring in either the present or prior proceedings do not constitute a basis for bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. So that's the standard for the — so what we're talking about here is extrajudicial versus material that occurs during the course of the proceedings. Well, but you could say things in the course of the proceedings that showed that you just — you'd really had it with the person and that you really didn't — you didn't like them and that they were getting on your last nerve and you just — and, you know, an attorney would not — you know, an attorney is not acting out of turn in bringing those things to the court's attention if that — if that's occurring. No, of course not. And I'm not suggesting that the — So, you know, I don't know. It seems like — it seems like sometimes we can waste our time on things saying you can't bring the motion, but — you can bring the motion, but this is why you lose. Yes, Your Honor. I'm not saying that he couldn't bring the motion. I'm saying that he — that the motion was properly denied. And I'm saying that the motion was properly denied because in this situation where there was no extrajudicial information considered, the only basis for such a motion under Supreme Court law is deep-seated antagonism that would make fair judgment impossible. And there's no evidence of that here whatsoever in any way, shape, or form. Well, it seems like you were maybe trying to sweep some things under an appeal waiver on a different case, weren't you? I'm sorry. I didn't follow that, Your Honor. Well, there's more than one case. Correct. And so where he waived his right to appeal on one, and — but then aren't you claiming that that would include a — he can't bring a motion to recuse? No, Your Honor. Okay. No. Maybe I misunderstood your position. No. I'm sorry if I — if I in some way confused the situation. There are two cases. The waiver issue applies only to the fraud case and not to the revocation case because there was no plea agreement containing an appeal waiver in the revocation case. My position has nothing to do with whether he could bring the motion. It has to do with whether the court properly denied that motion. I thought you were claiming that the waiver of the right to appeal in a plea agreement case covers a motion to recuse that was filed after the plea agreement was signed. I thought you were claiming that. I don't believe I was. And I'm sorry if I misled the court in some way. Well, that's significant because that was a question I had as well, was how narrowly could we resolve this? Because I understood your briefing to argue that it was a threshold issue and suggesting it was jurisdictional, that we had to resolve the waiver issue. But you're — if I understand your answer to Judge Kellen's question, you're saying that's not your argument. I do believe that with respect to the fraud case, the right to bring this appeal was waived, was given up. That doesn't resolve the issue with respect to the revocation case, the recusal issue with respect to the revocation case, only with respect to the fraud case. And the recusal issues are joined, essentially, the same conduct from the judge. That is the position of the appellant in this case, that it was one set of conduct that added up to — Would you agree that we could just not address the waiver issue as a threshold matter because we've got to get to this recusal issue, at least in one of the cases, and the issue's the same in both cases? I would agree with that, Your Honor. I would beg you not to publish an opinion that implies that the appeal was not waived, but that doesn't mean that you can't just bypass the issue and go on to the other issue. Because I agree, the recusal issue does have to be resolved in this appeal, in this consolidated appeal. So with that, perhaps I should go back to his arguments for recusal. With respect to the interpleader action, Judge Mulway is a careful judge, and what she had in front of her was an allegation that some of this property was stolen. Let me ask you the same question I asked your co-counsel. What's the case law that says a district judge can, in essence, order an interpleader? Your Honor, I have not researched that issue. I was not on the case at the time, and I believe that if the appellant here had wanted to address that issue, he would have appealed that issue. The interpleader action went forward, and the issues were resolved by a magistrate judge, not by Judge Mulway. The property was dispersed in accordance with the results of that action, and as far as I know, no appeal was brought. That would be the appropriate place to make the argument that an interpleader action was an inappropriate resolution of those issues. Clearly, though, in terms of how Judge Mulway saw it and what her motivations were, she understood that some portion of this property was allegedly stolen. And as I understand it, some of it actually was, not just allegedly, but actually was stolen. She was concerned that sometimes stolen goods come with other stolen goods and has nothing to do with whether Mr. Shimabukuro was involved in the theft or had any knowledge of them being stolen. There were stolen goods in that property. So she wanted to make sure that there was no one else out there who was also an innocent victim who was unaware that these goods were in the possession of the court. And she struggled to figure out the best way to resolve that, and she came up with an admirable approach to it because the result of that interpleader action was to make sure that everyone got heard, including Mr. Shimabukuro, with respect to the resolution of those issues. How do you agree a district judge ordering a U.S. attorney to file a pleading is somewhat unique? She didn't do that, though, Your Honor. She did not do that. She was very careful not to do that. She believed it was the best resolution, and she repeatedly asked and asked, and she made it absolutely clear that she was asking and not ordering. The assistant U.S. attorney who was responsible for the prosecution brought in the civil division of our office. The civil division made a decision that it would be willing to go forward with this interpleader action because it was an appropriate resolution, but it was the U.S. attorney's office decision whether to do it that way. It was not an order. Thank you. Do any of the panel members have additional questions? All right. We've taken you into overtime, so that'll conclude the questions there, and I've given you one minute per rebuttal. Thank you. Trying to answer your question as quickly as I can. I want to remind the court that we made a second motion for recusal. That was an oral motion. When the resentencing at the OSC occurred and the court gave the 12 months, not the maximum sentence, we renewed our request again, and when that was denied, then we let it go. As to the interpleader action, we did appeal. There was an appeal filed immediately when the court said that that was the course of action. We subsequently withdrew it because it became moot, not because it didn't have any merit. What happened was the civil action kept going, and I was appointed for the civil action, and we settled it, and when we settled it to the satisfaction of Mr. Shimabukuro, there was no point in furthering the appeal. In that settlement, there was never an agreement that any of the items had been stolen. That settlement was done to settle the issue. A very small number of coins were given to this veteran. He accepted it. We moved on, and we got most of the coins, all the rest of the coins back. That was everybody's settlement, but there was never an agreement that any of those coins or stamps had been stolen. No one else came forward, and when the court initially said, I'm worried about other people, there was no evidence that there were other people. There was just one person who had come forward and said, my house was burglarized, and I think I identify some of these, and in fact, in the civil action, not one piece of paper proved that he owned any of those coins or stamps. We settled the case, which is why we withdrew the interpleader appeal. All right, thank you both for your argument. This matter will stand submitted.
judges: Callahan, Bade, Bough